IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ONEBEACON AMERICA INSURANCE )
COMPANY, )
 )
    Plaintiff, )       CIVIL ACTION FILE
 )
vs. )       NO.1:12-CV-00435-SCJ
 )
DIPLOMAT HOTEL CORPORATION )
R.M. KID ONE, LLC and )
KINGSTON HOTELS, LLC, )
 )
 )
    Defendant. )

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, ONE BEACON AMERICA INSURANCE COMPANY ("ONEBEACON"), Plaintiff in the above-styled action, pursuant to Fed. R. Civ. P. 15 (a) and the consent of the Parties, hereby amends its Complaint for Declaratory Judgment, showing this Honorable Court as follows:

### PARTIES, JURISDICTION, AND VENUE

1.

This is an action for declaratory judgment, brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between OneBeacon and Defendants, RM Kid One,

LLC ("RM Kid One"), Diplomat Hotel Corporation("Diplomat"), and Kingston Hotels, LLC ("Kingston Hotels" or "Kingston").

2.

OneBeacon is a company organized and existing under the laws of the state of Massachusetts, and having its principal place of business in Minnetonka, Minnesota. OneBeacon submits itself to the jurisdiction of this Court.

3.

Defendant, RM Kid One is a Georgia limited liability company with its principal place of business located at 2100 Parklake Drive, Marietta, Georgia, 30385. RM Kid One may be served with process by serving its registered agent, Jay R. Patel, 2100 Parklake Drive, in Marietta, Georgia, 30385.

4.

This Court has personal jurisdiction over the Defendant RM Kid One as it is a Georgia corporation. Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391.

5.

Defendant, Kingston Hotels, is a Georgia limited liability company with its principal place of business located at 2100 Parklake Drive, Marietta, Georgia, 30385. Kingston Hotels may be served with process by serving its registered agent, RC Patel, 2100 Parklake Drive, in Marietta, Georgia, 30385.

6.

This Court has personal jurisdiction over the Defendant Kingston Hotels as it is a Georgia corporation. Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391.

7.

Defendant, Diplomat, is a Georgia corporation with its principal place of business located at 2100 Parklake Drive, Marietta, Georgia, 30385. Diplomat may be served with process by serving its registered agent, R.C. Patel, 2100 Parklake Drive, in Marietta, Georgia.

8.

This Court has personal jurisdiction over the Defendant Diplomat as it is a Georgia corporation. Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391.

9.

This Court has original jurisdiction over this action according to the provisions of 28 U.S.C. § 1332, because it is a civil action in which the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and is among citizens of different states.

10.

Specifically, in the underlying insurance claim, Defendants have requested $1,286,285.60 in coverage benefits under OneBeacon Policy No.: 790-00-63-89-0001 ("the Policy")(See attached Exhibit "A" – Sworn Statement in Proof of Loss).

11.

An actual, justiciable controversy presently exists between the parties, which demands a declaration by this Court in order that OneBeacon may have its rights and duties under the Policy determined and avoid the possible accrual of damages.

**FACTUAL BACKGROUND**

12.

This case arises out of an insurance claim initiated by Defendant, RM Kid One, seeking coverage under the Policy for damages caused by vandalism and theft loss which occurred on or about July 20, 2010 to property located at 2265 Kingston Court, in Marietta, Georgia ("the Property").

13.

Jay R. Patel is the member-manager of RM Kid One.

14.

RC Patel is the sole-member of Kingston Hotels.

15.

RC Patel is the CEO of Diplomat.

16.

Defendant RM Kid One purchased the Property in 2008 from IMPAC hotels.

17.

RM Kid One paid approximately $3.4 million dollars to purchase the Property.

18.

At the time of the purchase, RM Kid One intended to renovate the Property to make it suitable for an "extended stay" hotel business.

19.

Prior to its purchase by RM Kid One in 2008, the Property was damaged in a fire loss.

20.

At the time of its purchase in 2008, the damage to the Property caused by the previous fire loss had not been fully repaired.

21.

At the time of its purchase in 2008, the Property consisted of two towers connected by a one-story conference center.

22.

After the Property's purchase in 2008, RM Kid One entered into an agreement with Diplomat wherein Diplomat agreed to manage the renovation and hotel franchising processes for the Property.

23.

At Diplomat's request, Cliff Whittle of MGH Insurance agency, procured business risk insurance coverage from OneBeacon in August, 2008.

24.

In procuring the insurance coverage, Cliff Whittle and MGH Insurance agency, acted exclusively as agents for Diplomat and RM Kid One.

25.

As part of the application process, Cliff Whittle communicated directly with OneBeacon's underwriters to negotiate the cost and parameters of coverage.

26.

At the request of Diplomat, Cliff Whittle submitted an ACORD application ("the Application") to OneBeacon on August 12, 2008. (See attached Exhibit "B" – August, 2008 ACORD Insurance application).

27.

The Application prepared and submitted by Whittle identified the named insured as "Diplomat RM Kid One LLC." (See attached Exhibit "B").

28.

The Application lists the project description as "Builders Risk for 'former Holiday Inn & Suites' Tower One (44 Units) Tower Two (149)." (See attached Exhibit "B").

29.

The Application did not identify any additional insured, lienholder, or other interested party. (See attached Exhibit "B").

30.

OneBeacon issued the Policy, which became effective on August 13, 2008.

31.

In accordance with the Application, OneBeacon identified the named insured on the Policy as "Diplomat RM Kid One LLC" (hereinafter "Diplomat RM Kid One").

32.

Upon information and belief, "Diplomat RM Kid One" is not and never has been a legal entity.

33.

In accordance with the Application, OneBeacon did not identify any additional insureds or lienholders for the Property.

34.

Between the date of purchase of the Property in 2008 by RM Kid One and the date of loss, partial renovation work to the property was completed.

35.

These renovations included the November, 2008, the destruction of the one-story conference center connecting the two towers and partition of the Property.

36.

After the demolition of the conference center, the Property consisted of two separate tower structures i.e., a six story tower and a seven-story tower, each on a separate plot of land.

37.

On June 30, 2009, RM Kid One sold the seven-story tower, and the connected real estate, to Kingston Hotels.

38.

As part of the June 30, 2009 purchase of the seven story tower ("Building 1"), Kingston entered into multiple mortgage agreements.

39.

Kingston executed a primary mortgage agreement with Independent Banker's Bank ("IBB") to secure a loan from IBB in the amount of $6.8 million.

40.

The loan from IBB served primarily as a line of credit to fund a portion of the purchase price and future renovation costs for Building 1.

41.

Kingston entered into a second (and subordinate) mortgage agreement with RM Kid One for $1.7 million.

42.

Pursuant to the terms of this second mortgage agreement, RM Kid One financed $1.7 million toward Kingston's purchase of Building 1.

43.

According to the terms of the promissory note that accompanied Kingston's mortgage agreement with RM Kid One, the loan matured on June 30, 2019 and, beginning August 1, 2012,

Kingston Hotels would make monthly interest payments of $2,853.33 to RM Kid One.   The principal loan amount would be paid in one lump payment by Kingston on or before June 30, 2019. (See attached Exhibit "D" – Promissory note between Kingston and RM Kid One.)

44.

Upon information and belief, RM Kid One used the proceeds from the sale of Building 1 to satisfy its mortgage obligations for the Property and retained exclusive ownership of the six-story tower ("Building 2") and the connected real estate.

45.

Both Building 1 and Building 2 retained the same address: 2265 Kingston Court, Marietta, Georgia.

46.

RM Kid One did not inform OneBeacon of the transfer of its ownership interest in Building 1.

47.

Diplomat did not inform OneBeacon of the transfer in ownership of Building 1.

48.

Neither Cliff Whittle, nor any other employee of MGH Insurance agency, informed OneBeacon of the transfer of RM Kid One's ownership interest in Building 1 to Kingston.

49.

OneBeacon had no knowledge of the transfer of ownership of Building 1 from RM Kid One to Kingston until after the July 20, 2010 loss occurred.

50.

In anticipation for the June 30, 2009 closing on June 13, 2009, RC Patel, CEO of Diplomat, requested that Cliff Whittle create a certificate of insurance identifying "Kingston Hotels, LLC/ Diplomat Companies" as a named insured on the Policy.

51.

On June 15, 2009, Cliff Whittle created a certificate of insurance identifying Kingston Hotels LLC and Diplomat Companies as insureds under the Policy. (See attached Exhibit "E" – June 15, 2009 Certificate of Insurance).

52.

In a section labeled "Description of Operations/ Locations/ Vehicles/ Exclusions added by Endorsement/ Special Provisions," Mr. Whittle indicated that "Independent Banker Bank is named as mortgagee for builders risk renovation of a 135,287 sq ft complex being converted to Candlewood Suites Property located at 2265 Kingston Ct. Marietta GA." (See attached Exhibit "E").

53.

IBB was not identified as an additional insured or a mortgagee under the Policy.

54.

Prior to the July 20, 2010 loss, RM Kid One did not provide OneBeacon with a copy of the June 15, 2009 Certificate of Insurance.

55.

Prior to the July 20, 2010 loss, Diplomat did not provide OneBeacon with a copy of the June 15, 2009 Certificate of Insurance.

56.

Prior to the July 20, 2010 loss, Cliff Whittle did not provide OneBeacon with a copy of the June 15, 2009 Certificate of Insurance.

57.

Prior to the July 20, 2010 loss, OneBeacon was unaware of the existence of the June 15, 2009 Certificate of Insurance.

58.

During the June 30, 2009 closing for the sale of Building 1, Kingston Hotels presented the June 15, 2009 certificate of insurance listing the named insured under the

Policy as "Kingston Hotels, LLC / Diplomat Companies." (See attached Exhibit "E").

59.

Upon information and belief, RM Kid One, Diplomat, and Kingston Hotels had a long standing business relationship with MGH Insurance agency and Cliff Whittle.

60.

Upon information and belief, Mr. Whittle obtained various types of insurance coverage from various insurers for other properties owned by representatives of RM Kid One, Kingston Hotels and Diplomat.

61.

OneBeacon did not issue, approve or have knowledge of any endorsement to the Policy listing or identifying Kingston Hotels as a named insured or as an additional insured.

62.

Mr. Whittle and OneBeacon did not reach an agreement to add Kingston Hotels as a named insured or an additional insured under the policy.

63.

MGH Insurance agency and Mr. Whittle were not expressly authorized by OneBeacon to bind coverage as to the Property /

Inland Marine line of insurance under which the Policy was created.

64.

Around the time of the purchase of Building 1 by Kingston Hotels in 2009, Kingston Hotels entered into a licensing agreement with Candlewood Suites which required additional structural and cosmetic changes to Building 1.

65.

In late July, 2009, MGH Insurance agency requested that the Policy be renewed to provide coverage for the time period between August, 2009 and August, 2010.

66.

MGH Insurance agency informed OneBeacon that construction was 10% complete and that the expected complete date would be June, 2010.

67.

Cliff Whittle did not inform OneBeacon of the transfer in ownership of Building 1.

68.

On August 14, 2009, OneBeacon renewed the Policy to provide coverage for the August 14, 2009- August 14, 2010 period and identified "Diplomat RM Kid One" as the named insured on the

Policy.  (See attached Exhibit "C" – Certified copy of OneBeacon
Policy number: 790-00-63-89-0001.)

69.

Kingston Hotels was not listed or identified as a named
insured or an additional insured under the Policy.

70.

On October 10, 2009, OneBeacon discovered that there was no
active construction at the Property.

71.

On June 24, 2010 OneBeacon advised Mr. Whittle that it
would not renew coverage on the Property for the August 14, 2010
– August 14, 2011 period.

72.

On or about July 20, 2010, a vandalism theft loss occurred
at Building 1 causing damage to the structure of the building.

73.

Subsequently, RM Kid One instituted a claim for the damage
with OneBeacon.  OneBeacon assigned this claim number 0AA775317
(herein after "the Claim").

74.

At the time of the loss, Kingston Hotels maintained
exclusive ownership of Building 1, subject to its mortgage
agreements.

75.

In conjunction with the Claim, RM Kid One, acting through its agent, Cliff Whittle, submitted a Notice of Loss to OneBeacon on November 3, 2010 which stated that damages from the vandalism and theft were estimated to be $407,284.00.

76.

On September 28, 2011 RM Kid One submitted a revised sworn statement of loss stating that the amount claimed from the vandalism and theft was $1,286,258.60.  (See attached Exhibit "A").

77.

On May 13, 2011, RM Kid One executed a Collateral Blanket Assignment of Deed to Secure Debt in favor of IBB (the "Assignment") (See attached Exhibit "F" – Collateral Blanket Assignment of Deed to Secure Debt and Security Agreement and All Related Loan Documents).

78.

According to this document, RM Kid One agreed to

    transfer, convey and assign unto Assignee
    all right, title interest, powers,
    privileges and options in, under and to the
    following Collateral Security Instrument
    (the Note secured thereby having been

> assigned by an Allonge of even date):
> *Purchase Money Deed to Secure Debt,*
> *Assignment of Rents and Security Agreement*
> *from Kingston Hotels, LLC to RM Kid One, LLC*
> *dated June 30, 2009, filed July 10, 2009 at*
> *3:10 P.M. recorded at Deed Book 14709, page*
> *236, Cobb County Records.*

(See Exhibit "F")(emphasis in original).

79.

According to the Assignment, RM Kid One agreed to the transfer described in Paragraph 78, to "secure Shama R. Patel and Jay R. 'JR' Patel (collectively 'Debtor') to IBB in the principal amount of ONE MILLION SEVEN HUNDRED FORTY-FOUR THOUSAND EIGHTY TWO AND 92/100 DOLLARS ($1,744,082.92) U.S."

80.

Upon information and belief, Diplomat, RM Kid One, and Kingston Hotels are separate and distinct business entities and none of the companies have an ownership interest, whether as subsidiary or otherwise, in the other companies.

## THE INSURANCE POLICY

81.

As discussed in Paragraph, 30, above, OneBeacon issued an Inland Marine/ Builder's Risk policy to "Diplomat RM Kid One" providing insurance coverage subject to the terms, conditions, and exclusions contained in the Policy. A true and correct copy

17

of the policy is attached hereto as Exhibit "C."  The Policy was
delivered in Georgia, and Georgia law applies to the
construction and interpretation of the Policy.

82.

The Policy provides on the Builder's Risk Coverage Form

> . . .
> Throughout this policy the words **you** and
> **your** refer to the Named Insured shown the in
> the Declarations.  The words **we, us,** and **our**
> refer to the Company providing this
> insurance.  The word **loss** means accidental
> loss or damage.
> . . .
> **COVERAGE**
> We will pay for direct physical loss to
> Covered Property at the locations described
> in the Declarations caused by or resulting
> from any of the covered causes of loss.
>
> **Covered Property**
>
> Covered Property means property that is
> owned by you or is property of others in
> your care, custody or control for which you
> are legally responsible consisting of:
>
> 1. Permanent building or structures while
>    under construction, erection, or
>    fabrication at the **"project site"**
>    described in the Declarations;
>
> 2. If specifically described in the
>    Declarations, buildings or structures
>    located at the **"project site"** that
>    existed prior to the inception of the
>    project;

3. If not covered by other insurance, temporary structures built or assembled at the **"project site"**, including fences, cribbing, scaffolding, falsework, and construction forms

4. Construction materials, supplies, fixtures, equipment or machinery that is intended to become permanently installed at the **"project site"** or to become part of temporary structures built or assembled at the **"project site"** . . . .

. . .

(emphasis in original).

83.

The Policy defines "project site" as "the premises, shown in the Declarations or described in the reporting forms you submit to us, where the Covered Property will be permanently located at the completion of construction, reconstruction, or renovation."

84.

The "schedule of locations" lists the insured location as "2265 Kingston Court, Southeast, Marietta, Georgia."  The Policy does not distinguish between Building 1 and Building 2.

85.

The Policy contains the following provisions in the **COMMON POLICY CONDITIONS** Section:

**C. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.  This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

. . .

**J.  Transfer of your Rights and Duties under this Policy.**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

86.

The Policy limits coverage to the named insured's interest in the property.  Specifically, in the COMMERCIAL INLAND MARINE CONDITIONS section, E. Loss Payment, the policy provides, "2. We will not pay you more than your financial interest in the Covered Property."

87.

The Policy contains the following provisions regarding the rights and duties of a mortgagee:

**COMMERCIAL INLAND MARINE CONDITIONS**
. . .

**MORTGAGEHOLDER'S CONDITION**

This **Mortgageholder's Condition** is applicable to mortgageholders on buildings

covered by a Commercial Inland Marine Coverage Form.

. . .

2. We will pay for a covered loss or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

3. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

4. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

    a. Pays any premium due under this policy at our request if you have failed to do so;

    b. Submits a signed, sworn proof of loss within 60 days after receiving notice form us of your failure to do so; and

    c. Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder

    All of the terms of this policy will then apply directly to the mortgageholder.

(emphasis added)

88.

The Policy contained the following language regarding "Loss Payees" under the policy:

**COMMERCIAL INLAND MARINE CONDITIONS**

. . .

**LOSS PAYEE CONDITION**

When a Loss Payee Schedule is attached to this Policy, the following provisions apply: For Covered Property in which both you and a Loss Payee shown in the Loss Payee Schedule have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss jointly to you an the Loss Payee, as interests may appear.

**<u>DECLARATORY RELIEF</u>**

89.

OneBeacon incorporates by reference the foregoing Paragraphs 1 through 88 as if fully set forth herein.

90.

Based on the foregoing, OneBeacon contends that uncertainty and insecurity exist between the parties with respect to rights, status, damages, and other legal relations regarding coverage for the Property as a consequence of the vandalism and theft loss.

### FIRST CLAIM FOR RELIEF

91.

"Diplomat RM Kid One," a non-existent entity, is listed as the named insured under the Policy.


92.

Given the foregoing, no contract of insurance exists between OneBeacon and any of the Defendants to this action.

93.

Moreover, as described above, the Policy defines "covered property" as "property that is owned by you or is property of others in your care[.]"

94.

The Policy defines "you" and "your" as the "Named Insured shown the in the Declarations."

95.

The Policy states that it provides insurance coverage for "direct physical loss to Covered Property at the locations described in the Declarations caused by or resulting from any of the covered causes of loss."

96.

In light of the above, Building 1 does not constitute "covered property" as that term is defined by the Policy.

97.

In light of the foregoing, the Policy does not provide coverage for any damage caused by the July 20, 2010 vandalism and theft.

## SECOND CLAIM FOR RELIEF

98.

The Certificate of Insurance identifying Kingston Hotels as a named insured does not bind OneBeacon as to coverage.

99.

As described above, Cliff Whittle, of MGH Insurance agency, drafted a certificate of insurance identifying Kingston Hotels as a named insured.

100.

Mr. Whittle was retained by representatives of Kingston Hotels, Diplomat, and RM Kid One to obtain coverage for Building 1 and create a certificate of insurance.

101.

Mr. Whittle had a longstanding business history with Defendants' representatives, RC Patel and Jay R. Patel.

102.

No agency agreement existed between MGH Insurance agency and OneBeacon which would authorize MGH Insurance agency, or Mr.

Whittle, to unilaterally bind OneBeacon with respect to Builder's Risk/ Inland Marine insurance coverage.

103.

Cliff Whittle and MGH Insurance agency acted exclusively as the agent for RM Kid One, Diplomat, and Kingston Hotels when they created the June 15, 2009 certificate of insurance.

104.

Given the foregoing, the June 15, 2009 certificate of insurance, created by Cliff Whittle, does not obligate OneBeacon to provide coverage for Building 1.

## THIRD CLAIM FOR RELIEF

105.

Kingston Hotels was never added to the Policy as a named insured or an additional insured under the policy.

106.

As quoted in The Policy section quoted above, the Policy states that its "terms can be amended or waived only by endorsement issued by us and made a part of this policy."

107.

The Policy further prohibits transfers of the policy without OneBeacon's "written consent."

108.

OneBeacon did not consent to adding Kingston Hotels as an additional insured.

109.

OneBeacon did not consent to a transfer of the policy from "Diplomat RM Kid One" to Kingston Hotels.

110.

Given the foregoing, and the allegations previously asserted herein, the policy was not transferred or amended to include Kingston Hotels as a named insured or an additional insured.

**FOURTH CLAIM FOR RELIEF**

111.

RM Kid One is not entitled to coverage under the Policy because it does not have any financial or insurable interest in the property.

112.

As described above, the Policy limits coverage to the extent of an entity's financial interest in Building 1.

113.

RM Kid One executed the Assignment on May 13, 2011.

114.

Through this Assignment, RM Kid One purported to transfer all security, or other, interest in Building 1 which it obtained through the "*Purchase Money Deed to Secure Debt, Assignment of Rents and Security Agreement from Kingston Hotels, LLC to RM Kid One, LLC dated June 30, 2009*" to IBB.

115.

Given the foregoing, and the allegations previously asserted herein, RM Kid One does not have a financial interest in the property and cannot recover under the Policy.

## FIFTH CLAIM FOR RELIEF

116.

OneBeacon is uncertain as to the scope of damages Building 1 incurred as a result of this loss.

117.

The Property suffered a fire loss prior to its purchase in 2008 by RM Kid One.

118.

Damage from the fire loss remained in the Property at the time of the purchase in 2008.

119.

When RM Kid One purchased the Property, it planned on renovating Building 1 to created an "extended stay" hotel business.

### 120.

RM Kid One entered into a franchising agreement with Candlewood Suites Hotel which required that certain structural and cosmetic changes be made to Building 1.

### 121.

Defendants Diplomat and RM Kid One completed renovation work to the Property during the time period between the purchase in 2008 and the date of loss.

### 122.

Given the foregoing, OneBeacon is uncertain which repairs to the Property are necessary as a result of the July 20, 2010 theft and vandalism loss, which repairs to the Property are necessary because of the prior fire loss, and which repairs to the Property were included in the original renovation plans.

### 123.

OneBeacon faces conflicting obligations in that it may not have an obligation to pay Diplomat, RM Kid One, or Kingston Hotels, and that payment to any one would constitute a voluntary payment and would be contrary to the terms of the Policy and applicable Georgia Law.  A refusal to pay the parties could

expose OneBeacon to civil liability for breach of the Policy and for bad faith.

124.

Alternatively, OneBeacon faces conflicting obligations in that if it pays RM Kid One, Kingston Hotels, or Diplomat, such payment may conflict with or may be contrary to the interests of the parties in Building 1 and the Policy as established by the deed instruments, security instruments, or by other facts made known to OneBeacon.  Refusal to pay based upon uncertainty in these interests could expose OneBeacon to civil liability for breach of the Policy and for bad faith.

125.

Based on the foregoing, OneBeacon asserts that a genuine dispute exists regarding the coverage issues mentioned above and a declaratory judgment is necessary to determine the rights and obligations of the parties.

**WHEREFORE,** OneBeacon prays:

    a. For a declaratory judgment stating that neither RM Kid One, Kingston Hotels, nor Diplomat is a named insured and therefore no contract for insurance exists between OneBeacon and any of the Defendants;

b. For a declaratory judgment stating that the Property is not considered "covered property" under the policy;

c. For a declaratory judgment stating that the June 15, 2009 certificate of insurance listing Kingston Hotels as a named insured does not bind OneBeacon as to coverage;

d. For a declaratory judgment stating that Kingston Hotels was not a named insured or an additional insured under the Policy;

e. For a declaratory judgment stating that RM Kid One is not entitled to coverage because it does not have any financial interest in the property;

f. For a declaratory judgment defining the proper scope of damages for this matter;

g. For such other and further relief as this honorable Court may deem proper under the circumstances; and

h. That process and summons be issued to all Defendants herein and that service on the Defendants be had as required by law.

This 15th day of March, 2012.

[signatures appear on next page]

Respectfully submitted,

**SWIFT, CURRIE, McGHEE & HIERS, LLP**


_____/s/  Mark T. Dietrichs_____
Mark T. Dietrichs
Georgia State Bar No. 221722
Jessica P. Morgan
Georgia State Bar No. 922902

**Plaintiff OneBeacon America Insurance Company**

1355 Peachtree Street, NE
Suite 300 The Peachtree
Atlanta, Georgia 30309
404.874.8800

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have this date electronically filed the foregoing **FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** via the CM/ECF System, which will send automatic notification to the following counsel of record:

Jeffrey D. Diamond
Law Offices of Jeffrey D. Diamond
115 Perimeter Center Place
South Terraces, Ste. 425
Atlanta, GA   30346
jdiamond@diamlaw.com

This 15th day of March, 2012.

                    SWIFT, CURRIE, McGHEE & HIERS, LLP


                    /s/ Mark T. Dietrichs_____
                    Mark T. Dietrichs
                    Georgia State Bar No. 221722
                    Jessica P. Morgan
                    Georgia State Bar No. 922902

                    **Plaintiff OneBeacon America
                    Insurance Company**


1355 Peachtree Street, NE
Suite 300 The Peachtree
Atlanta, Georgia 30309
404.874.8800

## CERTIFICATE OF FONT SIZE

Pursuant to L.R. 7.1D NDGa, I hereby certify that this document was properly prepared using the Courier New font, 12 point.

This 15th day of March, 2012.

/s/_Mark T. Dietrichs _____
Mark T. Dietrichs
Georgia State Bar No. 221722
Jessica P. Morgan
Georgia State Bar No. 922902

**Plaintiff OneBeacon America Insurance Company**

**SWIFT, CURRIE, MCGHEE & HIERS, LLP**
1355 Peachtree Street, NE
Suite 300 The Peachtree
Atlanta, Georgia 30309
404.874.8800

33