**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ONEBEACON AMERICA INSURANCE COMPANY, )<br><br>    Plaintiff/Counter-Defendant, )<br><br>v. )<br><br>DIPLOMAT HOTEL CORPORATION, )<br>R.M. KID ONE, LLC, KINGSTON )<br>HOTELS, LLC, and INDEPENDENT )<br>BANKERS BANK OF FLORIDA, )<br><br>    Defendants/Counter-Plaintiffs, )<br><br>DIPLOMAT HOTEL CORPORATION, )<br>R.M. KID ONE, LLC, and KINGSTON )<br>HOTELS, LLC, )<br><br>    Third Party Plaintiffs, )<br><br>v. )<br><br>MGT PROPERTY & CASUALTY, INC., )<br>d/b/a MGH INSURANCE, )<br><br>    Third Party Defendant. )<br> ) | CIVIL ACTION FILE<br>NO. 1:12-CV-00435-SCJ |

**INDEPENDENT BANKERS BANK OF FLORIDA'S MEMORANDUM IN
OPPOSITION TO KINGSTON HOTEL, LLC'S MOTION TO REOPEN CASE**

496727 v1

COMES NOW Independent Bankers Bank of Florida ("IBB") and, in opposition to the Motion to Re-Open Case and Motion for Court to Enforce Mediated Settlement Agreement [Doc. #188] (the "Motion") filed by Kingston Hotels, LLC ("Kingston"), IBB respectfully shows the Court as follows:

## I. INTRODUCTION

Most of the parties in this action have now filed their own motions seeking to reopen the case and "enforce the settlement."[1]    The parties' motions all agree that the settlement includes a payment of $1.5 million.  The motions make clear that the parties did <u>not</u> agree in mediation as to who gets the money.  There is a perfectly good reason why the parties did not negotiate the issue of who gets the money: Kingston agreed in 2009 in its Security Deed that IBB gets the money as part of IBB's collateral.  Despite the Security Deed, after the settlement amount of $1.5 million was agreed to at mediation, David Pettinato, the attorney for Kingston, Diplomat Hotel Corporation ("Diplomat") and R.M. Kid One, LLC ("RM Kid One"), requested that IBB agree to allow him to deduct a percentage of the settlement to pay his fees and expenses incurred.  IBB has refused because the entirety of the $1.5 million settlement must be applied to Kingston's more than $5 million loan balance in accordance with Kingston's Security Deed.  Mr. Pettinato

---

[1]  Kingston is represented by the same attorneys who represent Diplomat Hotel Corporation and R.M. Kid One, LLC.  However, Diplomat and R.M. Kid One did not join in Kingston's Motion for whatever reason.

has held up this settlement ever since.  The parties agreed to ask the Bankruptcy Court to determine the issue of whether IBB is entitled to receive all of the proceeds under its Security Deed, but Judge Diehl suggested the parties seek a ruling in this Court and expressed doubt whether the Bankruptcy Court has jurisdiction to make such a determination.[2]

Although Kingston discusses "apportionment" of the settlement proceeds in its Motion, it curiously fails to ask this Court to apportion, or even how it would like to apportion, the settlement funds.  Settlement proceeds by their nature are a creature of agreement, and the "apportionment" of settlement proceeds is determined by the parties' agreement (and law).  Although the mediation agreement did not specify that the proceeds come to IBB (because Pettinato refused to agree that IBB's interest has priority), the Security Deed and Georgia law do.  IBB never agreed to apportion the settlement proceeds.  In fact, Kingston admits that the parties did not agree in mediation to "apportion" the settlement proceeds by stating "KINGSTON expected, however, that the settlement monies would be fairly appointed [sic] between all interested Parties and non-parties."[3]  (Doc. #188, pp. 3-4).  IBB does not know who Kingston is referring to

---

[2] A copy of the Transcript of the August 22, 2013 Bankruptcy hearing is attached hereto as Exhibit A.

[3] Interestingly, Kingston also argues (erroneously) the opposite: that IBB cannot obtain the settlement funds because its "subjective understanding of the settlement

about the unidentified "all interested parties," but Kingston cannot enforce its "expectations" of receiving payment from the settlement to which IBB never agreed. Instead, Mr. Pettinato and his client Kingston which is indebted to IBB for more than $5 million, must abide by their agreements (and the law), namely the Security Deed in which Kingston granted IBB a first priority interest in the Property and all proceeds of the collateral, including the settlement proceeds.

## II. ARGUMENT AND CITATION OF AUTHORITIES

Kingston's Motion is full of mischaracterizations of facts, misstatements of the law, and erroneous and self-serving conclusions that ignore the undisputed fact that IBB maintains a first priority interest in the Property. Kingston also ignores that it has no legal or other authority which would nullify or otherwise render IBB's first priority interest inapplicable in this instance. Kingston's counsel also unfortunately engages in mud-slinging and makes unsubstantiated assertions about IBB's counsel and IBB's role in this lawsuit which regrettably require IBB to respond, although these issues are irrelevant to the legal issues before the Court.

---

agreement . . . is simply insufficient . . ." (Doc. #188, p. 9, quoting Jackson v. Cooper Lighting, LLC, No. 1:11-CV-067WLS, 2013 WL 1501611, *2 (M.D. Ga. Apr. 10, 2013).

A. **The Settlement Proceeds are Part of IBB's Collateral and IBB's First Priority Position has Priority.**

As fully demonstrated in IBB's Motion [Doc. #189-1, pp. 10-14], Kingston's Security Deed conveyed title to the Property to IBB on June 30, 2009.  The Security Deed was recorded in the Cobb County Deed Records in Deed Book 14709, page 236 on July 10, 2009.  (Doc. #189-2, Sullivan Aff., ¶4, Ex. A).  Kingston conveyed the Property to IBB as an "absolute conveyance" to include the land described in the Security Deed, plus "all income, rents, issues, profits, and revenues of the Premises… including without limitation all payments under leases or tenancies, proceeds of insurance, condemnation payments… and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Borrower of, in and to the same." (Security Deed, § (d), p. 2; Doc. # 189-2, Ex. A).  The Security Deed also granted the right to IBB "to adjust or compromise any loss under any insurance policies maintained pursuant to [the Security Deed] and to collect and receive the proceeds from any such policy or policies."  (Security Deed, §1.03(b); Doc. #189-2, Ex. A).  In fact, Kingston even agreed to immediately endorse and transfer all proceeds to IBB where any insurance company fails to disburse "directly and solely" to IBB.  (Id.).  In light of Kingston's agreements in the Security Deed, there is no question that the settlement proceeds – 100% of which emanate directly from the damage to the Property -- belong to IBB and it is a breach of the Security Deed for Kingston to refuse to allow the payment of the

settlement proceeds to be distributed to IBB to pay down Kingston's loan in accordance with the Security Deed.

Kingston makes the curious argument that the portion of the settlement proceeds being paid by MGT is for damages that are somehow different than the OneBeacon settlement payment or somehow excluded from IBB's security interest. Specifically, Kingston argues that the MGT portion of the settlement is for "tort claims" while the OneBeacon portion of the settlement is insurance proceeds. Kingston concludes that payment for tort claims (which Kingston admits IBB also asserted) are somehow exclusive to Kingston and outside the scope of IBB's security. However, Kingston's entire argument on this point is inconsistent with other positions taken by Kingston and Mr. Pettinato in this matter, and is really just a tortured reading of the settlement and Security Deed to suit Kingston's attorneys' purposes.

Kingston's position is inherently inconsistent with Kingston's other positions because Mr. Pettinato does not seek a contingency fee based upon MGT's $900,000 settlement payment. Mr. Pettinato seeks a contingency fee payment based upon a percentage of the entire $1.5 million settlement. (See Doc. #189-2, Ex. C). If Kingston was correct and the MGT portion of the settlement payment was somehow exclusively for Kingston's tort claims while OneBeacon's settlement payment was for IBB, then how could Mr. Pettinato justify seeking to recover a percentage of IBB's settlement proceeds?

Mr. Pettinato seeks to recover a percentage of the entire recovery, thereby admitting that the entire recovery is the same from both sources, i.e., compensation for damage to the Property.[4]

Second, Kingston's argument ignores the broad conveyance under the Security Deed. Kingston conveyed not only the real estate (or the "dirt") to IBB, but also all of the "income, rents, issues, profits, and revenues" of the Property. The claims against MGT by both Kingston and IBB were for the damage to the Property that were not covered by OneBeacon's insurance Policy due to MGT's negligence. Kingston does not contend that it had claims against MGT unrelated to the damage to the Property. In fact, nearly all of the discovery in this case focused on the damage to the building caused by the vandals and the values of those damages to the building. Had MGT properly insured IBB and Kingston, there would not have been a claim against MGT. The claims against MGT were for certifying coverage to IBB when there was none and causing IBB and Kingston to be potentially uninsured by failing to properly procure the insurance for the

---

[4] Moreover, the settlement payments from both payors are settlement payments. They are not insurance proceeds and tort proceeds. Kingston and IBB both asserted claims against both OneBeacon and MGT and Kingston's after-the-fact attempt to characterize the settlement payments from each of the payors as anything other than a payment to settle disputed claims is inaccurate and self-serving.

damage to the building.  Kingston's attempt to distinguish money paid by MGT from money paid by OneBeacon is inapposite.[5]

**B. IBB is not in Breach of the Settlement.**

Kingston articulates three ways that IBB has allegedly breached the settlement. First, Kingston claims that IBB is in breach for not filing a motion in the Bankruptcy Court seeking approval for Kingston to enter the settlement.  (Doc. #188, p. 5).  Second, Kingston asserts that IBB has breached the settlement by failing to file a motion in the Bankruptcy Court seeking the Court's instruction as to how the settlement proceeds should be disbursed.  (Doc. #188, pp. 5-6).  Finally, Kingston claims that IBB breached the settlement because the parties have not executed the global release and agreement. (Doc. #188, p. 6).

First, with respect to the motions in the Bankruptcy Court, Kingston filed its own motion to approve the settlement in the bankruptcy case on August 1, 2013.  A true and correct copy of Kingston's Motion to Approve Settlement and Compromise is attached to the Sullivan Affidavit as Exhibit "D" (Doc. #189-2, Ex. D).  Contrary to Kingston's statements, IBB participated in the preparation of a motion to be filed in Bankruptcy

---

[5] Kingston's argument about MGT's portion of the settlement payment also ignores that IBB asserted tort claims against MGT.  IBB's claims against MGT were far stronger because they were based upon MGT's false certification of coverage for IBB when there was none, and IBB was not subject to the "duty to read the policy" as Kingston was.

Court.  IBB's bankruptcy counsel and Kingston's bankruptcy counsel exchanged drafts of such a motion prior to the August 1 filing by Kingston.  Kingston's bankruptcy attorney was evidently unwilling to file the Motion as edited by IBB's counsel, and filed Kingston's unilateral Motion in the bankruptcy case instead.[6]

Moreover, although the parties participating in the mediation were unaware of this, it is not proper bankruptcy procedure for IBB, a secured creditor, to file a motion to authorize the debtor to compromise its claims.  Rule 9019 of the Federal Rules of Bankruptcy Procedure provides that the Bankruptcy Court may approve a compromise or settlement "on motion by the trustee and after notice and a hearing."  As Kingston is in a Chapter 11 bankruptcy, there is no trustee and the debtor assumes the role of the trustee. Therefore, IBB cannot be said to be in breach for failing to file motions in the Bankruptcy Court because (1) contrary to Kingston's inaccurate assertions, IBB participated in the drafting of a motion to be filed in bankruptcy, but Kingston refused to file the motion as edited by IBB's counsel, (2) Kingston filed its own motion which was heard, but not granted by the Bankruptcy Court, and (3) as a matter of Federal Bankruptcy Procedure, it is Kingston who is required to file such a motion, and despite

---

[6] The attorneys' exchanges of the proposed bankruptcy motions contain settlement discussions between these parties.  IBB is not disclosing them to the Court for this reason, but the point is that IBB did not ignore the issue of filing a motion with the Bankruptcy Court and was willing to file a joint motion in the form circulated to Kingston's bankruptcy counsel.

what the parties wrote in the mediation agreement, the Rules provide for Kingston, not IBB, to file such a motion.

With respect to Kingston's assertion that IBB is in breach because the parties have not executed a global release and agreement, this is not a breach for two reasons. First, IBB circulated a revised draft of the settlement agreement and no party has raised any objection to IBB's changes, including Mr. Pettinato and his clients.[7] (See Doc. #189-2, Ex. F). IBB remains ready and willing to execute the formal, global settlement agreement in the form it circulated to the parties. Second, Kingston's Motion is moot to the extent that it is premised on the fact that the lack of a signed, formal settlement agreement has kept OneBeacon and MGT from depositing the settlement fund. As seen in OneBeacon and MGT's Motion to Reopen [Doc. #190], the money has been deposited in the Swift Currie McGhee & Hiers trust account as provided in the mediation agreement. Thus, not only did IBB not breach with respect to the global settlement agreement, the money is safely on deposit contrary to Kingston's assertions.

---

[7] No party has objected to the changes to the settlement agreement proposed by IBB so IBB must assume that Mr. Pettinato's fee is the only impediment to finalizing and performing the settlement. See Doc. #189-8.

C. **The Bankruptcy Court Will Not Make a Determination as to the Issue of Which Party Receives the Proceeds.**

Kingston complains that IBB is in breach of the settlement for not seeking the Bankruptcy Court's ruling on the issue of which party should receive the settlement proceeds.  IBB has filed such a motion in this Court, following the Bankruptcy Court hearing on August 22, 2013 in which Judge Diehl indicated the parties should come to the District Court to enforce the settlement before the Bankruptcy Court can authorize Kingston to enter into it.  IBB does not understand why Kingston complains that there is no motion in Bankruptcy Court seeking a determination of the extent of IBB's interest in the settlement proceeds when this issue is now squarely before this Court.  Nevertheless, Judge Diehl made clear in the bankruptcy hearing that she believes that the parties should come to this Court first to obtain an Order on whether there is a settlement, and if so, the Bankruptcy Court would then be able to determine whether Kingston, the Debtor, is permitted to enter the settlement agreement.  Judge Diehl also questioned whether the Bankruptcy Court has jurisdiction to determine the issue of distribution of the proceeds to parties not involved in the bankruptcy.  (See Transcript, pp. 9-10, 25, 27-28).

In any event, the issue of who receives the money is the issue that is stalling and delaying the settlement.  If the Bankruptcy Court believes it is premature for it to decide it (if it is able to decide it at all), then IBB wishes for this Court to decide it so that the settlement may be finalized and the money paid.  If this Court can determine the dispute

as to which party gets the settlement money, then the parties can return to the Bankruptcy Court to obtain its approval for Kingston to enter the settlement.

**D. <u>Kingston and its Counsel have Distorted What Happened in This Case</u>.**

Unfortunately, Kingston's attorney chose to misrepresent the role of IBB's counsel and IBB in this lawsuit, as well as several other facts and events. First, perhaps the issue closest to being relevant to this dispute is Kingston's false statement that "neither IBB nor its counsel advised Kingston's counsel that it would seek to claim all settlement payment benefits, if a settlement was to be reached, during the litigation." (Doc. #188, p. 9). This is a complete misstatement of the truth. As demonstrated in the Sullivan Affidavit, although it was neither legally or practically necessary for IBB to remind Kingston or its counsel of Kingston's agreements in the Security Deed, IBB's counsel made it clear to Mr. Pettinato on the telephone in January 2013 that IBB would be entitled to receive all proceeds of the litigation, whether in settlement or after a trial because of its first priority interest in the Property. (Doc. #189-2, ¶ 10).

Then, in the opening presentations in mediation, the other parties gave lengthy presentations while IBB simply stated to all parties that IBB has the first priority security interest in the Property and thus would be entitled to receive all of the recovery agreed to at mediation. (Doc. #189-2, ¶9). IBB's counsel's statement at mediation was not "posturing" or negotiation, it was the very premise and foundation of IBB's settlement

discussion throughout mediation, and ultimately upon settlement.  But even though IBB made it clear to all parties that it believed it was entitled to all of the proceeds of settlement, IBB was not required to constantly remind Kingston or any other party about its Security Deed or rights thereunder.  Kingston's suggestion that IBB was acting deceptively by allegedly raising the issue of its first priority interest in the settlement proceeds is completely untrue, but also contradicted by the fact that the Security Deed has been public record since 2009, and IBB was added to this litigation because of its interest in the Property.  The fact that the parties did not negotiate an apportionment of the settlement proceeds, and that Kingston admittedly hoped or "expected" that IBB would agree to allow its attorneys to be paid from money that should be used to reduce Kingston's indebtedness, demonstrates that no separate agreement on apportionment was necessary because IBB is entitled to the proceeds in accordance with the Security Deed and the law.

IBB also strongly takes issues with Kingston's statements that IBB is attempting to recover all of the settlement proceeds "to the exclusion of Kingston," that it is unfair for Kingston's attorneys not to be paid for their representation of Kingston in this action, and that "IBB greedily wants it all."  [Doc. #188, pp. 10-11].  Kingston and its principals (who personally guaranteed Kingston's loan) obviously benefit from the settlement proceeds because Kingston's debt to IBB will be reduced.  Kingston benefits from the

settlement regardless of who receives the money. Thus, all of the mischaracterizations of IBB being "greedy" and seeking the settlement proceeds for itself are untrue and obfuscate the fact that Kingston is directly benefitting from the settlement proceeds through a substantial reduction in its indebtedness.

As to Kingston's attorneys being paid, that is not the issue. Kingston's attorneys entered a contract with their clients which provide how much money they are to be paid. There is <u>nothing</u> to say that IBB has agreed that Kingston's attorneys are entitled to be paid from IBB's collateral. Moreover, there is nothing stopping Kingston's attorneys from being paid by their clients, regardless of any "apportionment" of IBB's settlement proceeds. IBB is not seeking to prevent Kingston's attorneys from being paid; IBB is seeking to prevent any party from obtaining money that belongs to IBB and that is supposed to be used to reduce Kingston's indebtedness.

Finally, although irrelevant to the matters before the Court, Kingston states several times in its Motion that IBB "did little in the litigation" and "did little in litigating the matter." Kingston's attorneys wish to give the Court the impression that Mr. Pettinato did all of the work and IBB is trying to prevent him from being paid for it. As mentioned above, there is nothing stopping Mr. Pettinato from being paid by his clients with unencumbered funds. That is not an issue between Mr. Pettinato and IBB, it is an issue between Mr. Pettinato and his clients. But to the extent the Court wishes to inquire into

what party or attorney procured the result, Mr. Pettinato's inflated opinion of his work in this case is a complete distortion.  As an initial matter, IBB's counsel has detailed time records showing its work on this litigation which it can show the Court *in camera* to prove what it did in this case.

Mr. Pettinato's work on this case actually increased the cost to all of the parties and delayed a resolution that could and should have been reached in early 2013.  On January 3, 2013, while Mr. Pettinato was representing Kingston and his other clients on a contingency basis in violation of Georgia's ethical rules without a written contingency fee agreement with his clients,[8] and in violation of the Bankruptcy Code requiring him to obtain prior permission from the Bankruptcy Court allowing him to represent Kingston, Mr. Pettinato submitted a revised "Sworn Statement And Partial Proof of Loss" (the "Amended Proof of Loss") which greatly expanded these proceedings and forced IBB into either adopting what was essentially a false insurance claim, or taking a different position on the damages which would undermine the damages theory offered by Mr. Pettinato's clients.

The Amended Proof of Loss was submitted after the parties had announced to this Court that they had agreed to add MGT to the case and try to schedule a mediation.  In

---

[8] It is a violation of Georgia's Rules of Professional Conduct for an attorney to enter into a contingent fee agreement unless it is in writing.  See Georgia Rule of Professional Conduct 1.5(c)(1).

November and December 2012, the attorneys in the lawsuit agreed to add MGT as a party to the lawsuit and schedule a mediation to occur during January or February 2013 (assuming that MGT would also agree).  In fact, counsel for the parties (MGT was not yet a party) had a telephone conference with the Court on December 20, 2012 wherein the parties announced this plan and requested an extension of discovery to facilitate the addition of MGT and an early mediation.  The Court granted this relief on December 21, 2012 based upon counsel's representations.  [Doc. # 61].

Thereafter, on January 3, 2013, to all of the parties' surprise, including Mr. Pettinato's then-co-counsel Jeff Diamond, Mr. Pettinato submitted the Amended Proof of Loss to OneBeacon.  The Amended Proof of Loss submitted by Mr. Pettinato – 2.5 years after the damage to the Property – increased the amount of Kingston's claim under the Policy from approximately $1.2 million to $7,854,541.16.   The Proof of Loss was submitted under oath on a form with the following legend in all caps at the top:

> ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES A STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

A true and correct copy of the Amended Proof of Loss is attached hereto as Exhibit "B." Mr. Pettinato failed to tell anyone about the Amended Proof of Loss before the parties

made their representations to the Court on December 20, and the Amended Proof of Loss had been signed and notarized on December 19, 2012 – the day before.  Mr. Pettinato's surprise Amended Proof of Loss, which was $6,600,000 more than the amount claimed when all parties were agreeing to mediate, caused OneBeacon and MGT to understandably refuse to mediate until they could engage in extensive discovery to investigate the suddenly exponential damages claimed by Kingston.

Over the ensuing months, the parties were forced to engage in extremely time consuming and expensive discovery because of the Amended Proof of Loss.  Several months after shocking the parties with the $7.8 million Amended Proof of Loss, Mr. Pettinato essentially conceded the falsity of the $7.8 million Amended Proof of Loss and submitted yet another amended statement of damages on April 23, 2013 lowering the damages claim to $4,692,682.29.  A true and correct copy of the April 23, 2013 letter revising the damages again is attached hereto as Exhibit C.  Having once again dramatically changed Kingston's damages claim, Mr. Pettinato further eroded the credibility of the evidence to prove damages.

Now, after submitting what was a demonstrably false document which caused the delay in resolution of this case and a substantial increase in the cost of this litigation for all of the parties, and doing it at a time when he was in violation of the ethical rules and Bankruptcy Code, Mr. Pettinato accuses IBB of doing little to litigate this case in his

attempt to take credit for the settlement result.  It is unclear what Pettinato contends IBB should have done during the litigation, but after he had submitted the patently absurd $7.8 million Amended Proof of Claim, the only choice IBB had was to either undermine Pettinato's absurd damages proffer and hire its own experts to prove damages which would have been far less than $7.8 million or $4.6 million, or allow Mr. Pettinato to try to actually prove the damages articulated in the submissions he was sending.  Mr. Pettinato failed to prove the damages he asserted in the Amended Proof of Claim as revised in April, and the parties spent tens of thousands of dollars litigating the value of the damage to IBB's collateral only to settle at a settlement amount that likely would have been reached in early 2013 but for Mr. Pettinato's conduct.

IBB also notes that Mr. Pettinato cannot get his facts straight about some of the matters at issue here.  For example, he claims on September 4, 2013 in this Court to have incurred costs of $66,663.27 (Doc. # 188, p. 13) while he claimed on August 29, 2013 in the Bankruptcy Court that his costs incurred were $86,808.27.  Moreover, on April 17, 2013, Mr. Pettinato filed an Affidavit in the Bankruptcy case stating under oath that he had been representing Kingston and his other clients in this matter since October 1, 2012. (Doc. # 188-1, p. 7).  But Mr. Pettinato's fee application filed in the Bankruptcy Court seeks compensation for the period August 8, 2012 through and including August 13, 2013 and states that his expenses for which he is seeking to be reimbursed date back to

August 10, 2012 (which was months before October 1, and many months before May 2013 when he became authorized by the Bankruptcy Court to represent Kingston).

These inconsistencies are not minor details. These inconsistencies demonstrate that Mr. Pettinato has been inattentive to important issues throughout this litigation – especially the major issue of which party is entitled to the proceeds of the litigation. As stated above, however, IBB does not seek to prevent Mr. Pettinato from being paid by his clients. IBB simply seeks to enforce its interest in and to the settlement proceeds to pay down Kingston's indebtedness. Mr. Pettinato may be paid by his clients for his services – just like all the other lawyers in this case – from unencumbered funds.

### III. <u>CONCLUSION</u>

Kingston's Motion should be denied. IBB agrees that the parties settled for $1.5 million. But Mr. Pettinato is holding up the settlement by insisting that a portion of the settlement proceeds be paid to him despite IBB's undisputed first priority interest in the Property and all proceeds of the Property. In fact, he insists that his percentage of the settlement amount is to be deducted from the entire settlement despite acknowledging that part of the settlement payment is to settle IBB's claims. This Court should deny Kingston's Motion and grant IBB's Motion [Doc. #189].

Respectfully submitted this <u>23rd</u> day of September, 2013.

s/John O'Shea Sullivan
John O'Shea Sullivan
Georgia Bar No. 691305
ssullivan@burr.com
Ashby K. Fox
Georgia Bar No. 415105
afox@burr.com
Amanda E. Wilson
Georgia Bar No.  165135
awilson@burr.com

Attorneys for Defendant Independent
Bankers Bank of Florida

**BURR & FORMAN LLP**
171 Seventeenth Street, N.W.
Suite 1100
Atlanta, Georgia  30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244

---

## CERTIFICATION OF COUNSEL

---

I hereby certify that the foregoing **INDEPENDENT BANKERS BANK OF FLORIDA'S MEMORANDUM IN OPPOSITION TO KINGSTON HOTELS, LLC'S MOTION TO REOPEN CASE** has been prepared with Times New Roman, 14 point font, one of the font and point selections approved by the Court in LR 5.1B.

s/John O'Shea Sullivan
John O'Shea Sullivan
Georgia Bar No. 691305
ssullivan@burr.com

**BURR & FORMAN LLP**
171 Seventeenth Street, N.W.
Suite 1100
Atlanta, Georgia  30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of September, 2013, I filed the foregoing **INDEPENDENT BANKERS BANK OF FLORIDA'S MEMORANDUM IN OPPOSITION TO KINGSTON HOTELS, LLC'S MOTION TO REOPEN CASE** with the Clerk of Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to the attorneys of record:

> Mark T. Dietrichs, Esq.
> Jessica M. Phillips, Esq.
> Swift, Currie, McGhee & Hiers, LLP
> 1355 Peachtree Street, NE
> Suite 300 The Peachtree
> Atlanta, Georgia  30309
> Attorneys for Plaintiff OneBeacon America Insurance Company
>
> Ronald F. Negin, Esq.
> Robyn M. Roth, Esq.
> Eric M. Jenniges, Esq.
> Bovis, Kyle, Burch & Medlin, LLC
> 200 Ashford Center North, Suite 500
> Atlanta, Georgia  30338-2668
> Attorneys for Third Party Defendant MGT Property & Casualty, Inc. d/b/a MGH Insurance
>
> David J. Pettinato, Esq.
> Merlin Law Group, P.A.
> 777 S. Harbor Island Blvd., Suite 950
> Tampa, Florida  33602
> Attorney for Defendants/Counter-Plaintiffs Diplomat Hotel Corporation, R.M. Kid One, LLC, and Kingston Hotels, LLC

Ellaretha Jones, Esq.
E. Jones & Associates, LLC
50 Hurt Plaza, Suite 824
Atlanta, Georgia  30303
Attorney for Defendants/Counter-Plaintiffs Diplomat Hotel
Corporation, R.M. Kid One, LLC, and Kingston Hotels, LLC

s/John O'Shea Sullivan
John O'Shea Sullivan
Georgia Bar No. 691305
ssullivan@burr.com

**BURR & FORMAN LLP**
171 Seventeenth Street, N.W.
Suite 1100
Atlanta, Georgia  30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244